**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.                                           No. 06-4789

ULYSSES RAY EVANS,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
James C. Dever III, District Judge.
(4:05-cr-00079-D)

Argued: November 2, 2007

Decided: May 27, 2008

Before MOTZ and GREGORY, Circuit Judges,
and Claude M. HILTON, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Motz wrote the majority opinion, in which Senior Judge Hilton joined. Judge Gregory wrote a separate opinion concurring in the judgment.

## COUNSEL

**ARGUED:** Eric Joseph Brignac, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. Anne Margaret Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Charged with possessing and uttering a forged security, committing identity fraud, and possessing stolen mail, Ulysses Ray Evans pled guilty to identity fraud pursuant to a plea agreement in which he reserved his right to appeal a sentence in excess of the advisory Guidelines range. The district court sentenced him to 125 months' imprisonment, a more than 300 percent deviation from the Guidelines range of twenty-four to thirty months.[1] Evans appeals, maintaining that his sentence is unreasonable. We placed the case in abeyance awaiting the Supreme Court decision in *Gall v. United States*, 128 S. Ct. 586 (2007). That opinion now has issued, and we affirm.

I.

In 2004, Evans purchased personal information about Wachovia Bank account holders Robert Reed and Paul Richards. Using this information, Evans ordered and received boxes of checks for accounts held by Reed and Richards. Over the next several months, Evans negotiated many fraudulent checks on Reed's and Richards' accounts. This identity theft caused substantial financial losses to a number of businesses, as well as significant financial hardship and emotional suffering for the victims.

---

[1] Evans contends that his sentence is 416 percent above the high end of the Guidelines range; however, his 125-month sentence is 416 percent *of* but only 316 percent *greater than* a thirty month term of imprisonment.

On October 17, 2004, Reed contacted the local police department in Winterville, North Carolina, to report that someone had fraudulently written numerous checks, totaling $4,774.80, on his account to various local businesses. After investigation, police officers discovered that Evans had negotiated the stolen checks on the Reed account and had in fact written fifty-four checks on that account between October 9 and October 19, 2004. Police contacted Evans and arranged for him to surrender himself — but Evans then failed to do so.

On November 30, 2004, a Wachovia fraud investigator notified postal inspectors that Richards' account had been compromised. A person later identified as Evans impersonated Richards, changed the account's address to a residence in Charlotte, North Carolina, and ordered a box of checks delivered to the new address. Between November 17, 2004, and December 22, 2004, Evans negotiated sixty-four checks on the Richards account. Police arrested Evans at the Charlotte address on December 2, 2004.

When postal inspectors later interviewed Evans, he admitted to purchasing personal information about Reed and Richards from a childhood friend employed by Wachovia Bank. He also told the inspectors that he wrote fake driver's license numbers and social security numbers on the checks, and that he had false identification cards made in Reed's and Richards' names.

Evans' fraudulent negotiation of these checks caused an aggregate loss of $13,634.89 to businesses in North Carolina, South Carolina, and Virginia. He used seven social security numbers (six belonging to actual persons) and ten driver's license numbers (all belonging to actual persons) to negotiate the checks.

Furthermore, Evans told authorities that between June 2004 and his arrest in September 2005, he bought approximately ten to twenty false identification cards in order to perpetrate additional identity theft crimes using the personal information of new potential victims that he had obtained. Evans successfully committed identity theft with at least one new victim's information.

Following his arrest and indictment for these crimes, Evans agreed to plead guilty to identity theft. In his plea agreement, Evans recog-

nized that the court might sentence him to imprisonment for a term of up to fifteen years (or 180 months) without parole.

The probation department prepared a Prehearing Sentence Report (PSR), which described Evans' crimes and the severe repercussions for his victims. The PSR related that Richards and his wife informed a probation officer that they had lost their faith in "the system" and felt violated because Evans had compromised their personal information. They believed that his actions had damaged their reputations and worried that they could not write checks for fear that stores would not accept those checks. The Richardses viewed the crimes as a "nightmare," and the probation officer observed that "[t]he Richards are still suffering the long lasting effects of their information being stolen and used in an illegal fashion."

Robert Reed and his wife similarly told the probation officer they had spent substantial time, as well as money, to rectify the harm Evans had caused them. They said they had communicated with eight different police departments regarding the checks that Evans forged. The Reeds explained that Evans' crime had permanently affected them and they feared for their safety and worried about who else might have their personal information. The Reeds also related that they had been threatened with a civil lawsuit, arrest, and prosecution because of Evans' actions.[2]

The PSR also set forth Evans' extensive criminal history. It listed forty-five prior convictions, most of which involved false pretenses, use of fraudulent checks, forgery, or other fraud. In regard to his most recent prior offense, the PSR noted that Evans had been convicted in federal court for various fraud charges arising from his use of individuals' credit reports to obtain credit cards and withdraw money in their names. Further, Evans also had been convicted of an additional eighteen nonscoreable offenses and had violated probation fifteen times.

The PSR calculated the appropriate advisory Guidelines range using the 2005 edition of the U.S. Sentencing Commission Guidelines Manual (U.S.S.G.). Under U.S.S.G. § 2B1.1, Evans' crimes war-

---

[2]The Reeds additionally submitted a victim-impact letter to the district court, and Mrs. Reed testified at Evans' sentencing hearing.

ranted an initial offense level of twelve, beginning with a base offense level of six, adding four levels due to the amount of money involved, and adding another two levels due to the number of victims affected. *See* U.S.S.G. § 2B1.1(a)(2), (b)(1)(C), (b)(2)(A). The PSR recommended a reduction of two levels, because Evans accepted responsibility for his actions. *See* U.S.S.G. § 3E1.1(a)). Thus, Evans received a final total offense level of ten. That level, coupled with a criminal history category of VI, led to an advisory Guidelines range of twenty-four to thirty months. The Government then moved, pursuant to U.S.S.G. § 5K1.1, for a downward departure from the Guidelines range based on Evans' assistance in prosecuting the bank employee who sold Evans the victims' personal information.

The district court notified the parties that it contemplated an upward deviation from the advisory Guidelines range because the court believed the range underrepresented Evans' "substantial criminal history" and "understate[d] the seriousness" of Evans' offenses. The court then held a thorough sentencing hearing at which it carefully considered the arguments of both sides. At the conclusion of the hearing, the court explained at length its grounds for rejecting the Government's motion for a downward departure and instead deviating upward from the Guidelines range to sentence Evans to 125 months' imprisonment. The court also issued a fifteen-page written opinion detailing its reasons for concluding that this sentence presented no conflict with the Guidelines and best furthered the factors set forth in 18 U.S.C. § 3553(a) (2000). Evans noted a timely appeal, principally contending that the Guidelines themselves do not permit the district court to impose this sentence, and so we must find it unreasonable.

## II.

*Gall* and its companion case, *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Rita v. United States*, 127 S. Ct. 2456 (2007), supply the precedent governing Evans' challenges to his sentence. These cases unequivocally establish that: (1) the advisory Sentencing Guidelines, although important, simply do *not* have the preeminent and dominant role that Evans claims for them, and (2) an appellate court *must* defer to the trial court and can reverse a sentence *only* if it is unreasonable, even if the sentence would not have been the choice of the appellate court.

## A.

With respect to the first principle — the role of the Guidelines in sentencing determinations — of course, a district court must *begin* "by correctly calculating the applicable Guidelines range." *Gall*, 128 S. Ct. at 596. Thus, "[t]he sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines." *Rita*, 127 S. Ct. at 2465. But even though the Guidelines are "the starting point and the initial benchmark," they "are not the only consideration." *Gall*, 128 S. Ct. at 596.

Indeed, a district court may *not* even "presume that the Guidelines range is reasonable." *Id.* at 596-97; *see also Rita*, 127 S. Ct. at 2465. Instead, the district court must "giv[e] both parties an opportunity to argue for whatever sentence they deem appropriate" and "then consider *all* of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 128 S. Ct. at 596 (emphasis added); *see also Kimbrough*, 128 S. Ct. at 564 (reiterating that the "Guidelines range" is just one of "the array of factors warranting consideration" by the sentencing judge). In each case, the court "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. A district court may reject a sentence within the advisory Guidelines range because "the case at hand falls outside the 'heartland'" to which the individual Guidelines apply or because a sentence within the Guidelines fails to reflect the other § 3553(a) factors or "because the case warrants a different sentence regardless." *Rita*, 127 S. Ct. at 2465.

If the district court decides to impose a sentence outside the Guidelines range, it must ensure that its justification supports the "degree of the variance"; thus, "a major departure should be supported by a more significant justification than a minor one." *Gall*, 128 S. Ct. at 597. But a district court need not justify a sentence outside the Guidelines range with a finding of "extraordinary" circumstances. *Id.* at 595, 602 (upholding a sentence of thirty-six months' probation, a 100 percent downward deviation from the Guidelines range of thirty to thirty-seven months' imprisonment). And in fact, as the Solicitor General conceded in *Kimbrough*, a sentencing judge may "vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." 128 S. Ct. at 570, 576 (internal

quotation marks and alterations omitted) (upholding a sentence of 180 months' imprisonment, a 21 percent downward deviation from the Guidelines range of 228 to 270 months).

### B.

With respect to the second principle — the role of a reviewing court — *Gall*, *Kimbrough*, and *Rita* are just as clear. An appellate court reviews a sentence *only* "under a deferential abuse-of-discretion standard," regardless of whether the sentence imposed is "inside, just outside, or significantly outside the Guidelines range." *Gall*, 128 S. Ct. at 591. Initial review is for "significant procedural error," ensuring that the district court has not, for example,

> fail[ed] to calculate (or improperly calculat[ed]) the Guide-lines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range.

*Id.* at 597. Then an appellate court "consider[s] the substantive reasonableness of the sentence imposed." *Id.* At this stage of review, the court will

> take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the court may *not* apply a presumption of unreasonableness. It may consider the extent of the deviation, but *must give due deference* to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.

*Id.* (emphasis added) (citation omitted).

*Gall* explicitly cautions that "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appro-

priate is insufficient to justify reversal of the district court." *Id.* "[I]t is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable." *Id.* at 602. Rather, "the Court of Appeals should [give] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justif[y] the sentence." *Id.* Deference is required because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Id.* at 597 (quoting Br. for Fed. Pub. & Cmty. Defenders et al. as *Amici Curiae* at 16). "Moreover, '[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations . . . as they see so many more Guidelines sentences than appellate courts do.'" *Id.* at 598 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

*Kimbrough* again emphasizes the need for an appellate court to defer to the district court's assessment of whether a within-Guidelines sentence would adequately serve sentencing objectives and whether attempts to achieve uniformity across defendants convicted of similar crimes would work an injustice in a particular case. 128 S. Ct. at 574-75 (noting that "some departures from uniformity were a necessary cost of the remedy" adopted in *Booker*). Thus, the *Kimbrough* Court held that, "[g]iving due respect to the District Court's reasoned appraisal" of both the "particular circumstances of [the defendant's] case" and the views of the Sentencing Commission, "a reviewing court could not rationally conclude" that the sentence awarded "qualified as an abuse of discretion," even though it was well outside the prescribed Guidelines range and relied heavily on a single sentencing factor. *Id.* at 576.

With these governing principles in mind, we turn to the case at hand.

III.

We first review Evans' sentence for reasonableness, as *Gall*, *Kimbrough*, and *Rita* require. We then consider Evans' two specific challenges to the sentence.

A.

As *Gall* instructs, we initially review for "significant procedural error." 128 S. Ct. at 597. In arriving at the sentence it selected, the district court expressly adopted the presentence report, which properly calculated the advisory Guidelines range. The court did not treat the Guidelines as mandatory; rather it gave the parties an opportunity to argue for whatever sentence they deemed appropriate, and it considered all of the § 3553(a) factors. It then imposed a sentence based on facts not challenged by Evans and provided an explanation for its deviation from the Guidelines range.

Because the court properly engaged in each of these analytical steps and thoroughly explained its reasoning supporting the sentence, we find no evidence of procedural error, let alone "significant procedural error." *See id.* Accordingly, we are left to review only for "substantive reasonableness" and to assess "whether the District Judge abused his discretion in determining that the § 3553(a) factors supported [the] sentence . . . and justified [the] substantial deviation from the Guidelines range." *Id.* at 597, 600.

In determining what sentence to impose, the district court carefully considered the PSR, the Reeds' victim impact letter, and Mrs. Reed's testimony. The PSR detailed the vast extent of Evans' prior criminal activity and his victims' account of the substantial harm he caused them. Evans offered no contrary evidence. The district court found the PSR credible and specifically adopted its findings.

The district court then found that Evans had "repeatedly perpetrated fraud and theft crimes" but, prior to 2002, had served relatively little time in jail despite "his repeated criminal conduct." The record provides ample support for this finding — in fact, in the eleven years between 1991 and 2001, Evans was convicted of *forty-three* crimes, most of which involved fraud, but he received only sentences of probation or imprisonment for less than a year for nearly all of these offenses.

The court further found that even when Evans was convicted in 2002 in the Western District of North Carolina for various federal frauds and sentenced to forty-six months' imprisonment and three

years of supervised release, this more serious penalty did not deter him from engaging in additional fraud while on supervised release. The court noted that "Evans still owes $236,439.68 in restitution" for the crimes committed in the Western District, although he had secured possession of "a Mercedes and Lexus following his release from prison" for those crimes.

The court concluded that Evans had "displayed manifest contempt for the legal system, the law, and his victims." It observed that, "[t]ime after time, Evans has committed economic crimes, received short sentences, and failed to comply with conditions of probation or supervised release." The court noted that as "technology has advanced, Evans' schemes have advanced from forging checks to obtaining credit card information and perpetuating more far-reaching and sophisticated fraud."

On the basis of these facts, the district court determined that a sentence of 125 months' imprisonment served the factors set forth in § 3553(a). The court explained that, in its view, Evans simply would not be deterred from continued criminal conduct "absent a lengthy sentence." Thus, it concluded that a 125-month sentence was necessary in order to "promote[ ] respect for the law, provide[ ] just punishment for the offense, afford[ ] adequate deterrence to criminal conduct (both as to Evans personally and others like him), and protect[ ] the public from further crimes of the defendant." In 18 U.S.C. § 3553(a), Congress has mandated that a sentencing court consider these precise factors and choose a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," "provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant." Although the deviation from the Guidelines range in this case clearly is significant, the district court provided "significant justification" for the degree of the deviation, which is all that is required. *See Gall*, 128 S. Ct. at 597.

The district court carefully and thoroughly applied the prescribed sentencing factors to the facts of the case, and it "adequately explain[ed] the chosen sentence." *See id.* The court's approach both "promote[s] the perception of fair sentencing" and allows us to engage in "meaningful appellate review." *See id.* Therefore, given the

requisite deference we must accord to the considered judgment of the district court, we can only conclude that the chosen sentence is reasonable even though it does represent a significant upward deviation from the Guidelines range. *See id.*

B.

Nevertheless, Evans challenges the reasonableness of his sentence on two grounds. *Gall*, *Kimbrough*, and *Rita* foreclose both challenges.

1.

First, and chiefly, Evans contends that the *Guidelines themselves* do not allow the district court to impose his sentence. In addition to relying on § 3553(a) factors, as outlined above, the district court also believed that U.S.S.G. §§ 2B1.1, cmt. n. 19(A), and 4A1.3, p.s., justified its substantial upward deviation from the advisory Guidelines range.[3] Evans strenuously argues that neither of these Guidelines provisions permits an upward deviation here, and therefore we must find the sentence unreasonable. The fundamental flaw with this argument is that, even if Evans is correct and the Guidelines themselves do not sanction the deviation here, the sentence remains reasonable because it properly reflects the § 3553(a) considerations.

Of course, when sentencing, the district court must *begin* by correctly calculating the applicable Guidelines range. *Gall*, 128 S. Ct. at 596. Failure to do so would be a significant procedural error. *Id.* at 597. But in the present case, the district court correctly calculated the Guidelines range as required, and Evans does not argue to the contrary.

As the Supreme Court explained in *Rita*, after completing the process of determining the appropriate Guidelines range, the district

---

[3]Section 2B1.1, comment n. 19(A) provides that an upward departure may be warranted when the Guidelines range "substantially understates the seriousness of the offense." Section 4A1.3(a)(1), p.s., allows for an upward departure if the court believes that the criminal history category "substantially under-represents the seriousness of the defendant's criminal history."

court then considers whether a "Guidelines sentence should not apply." 127 S. Ct. at 2465. *Rita* expressly recognizes that a district court may conclude that a Guidelines sentence "should not apply" because "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply [citing Guidelines departure provision]" *or* "because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations" *or* "because the case warrants a different sentence regardless." *Id.*

*Gall* and *Rita* thus firmly establish that although adherence to the advisory Guidelines departure provisions provides *one way* for a district court to fashion a reasonable sentence outside the Guidelines range, it is *not* the only way. Rather, after calculating the correct Guidelines range, if the district court determines that a sentence outside that range is appropriate, it may base its sentence on the Guidelines departure provisions *or* on other factors so long as it provides adequate justification for the deviation.

When reviewing the sentence selected by the district court, regardless of whether the court deviates from the advisory Guidelines range because of a Guidelines-sanctioned departure, *or* because of one or more § 3553(a) factors, *or* because of some other reason — that is, no matter what provides the basis for a deviation from the Guidelines range — we review the resulting sentence only for reasonableness. *See Gall*, 128 S. Ct. at 597; *Rita*, 127 S. Ct. at 2465.

Furthermore, we must look to "the totality of the circumstances" to determine whether the ultimate sentence is reasonable. *Gall*, 128 S. Ct. at 597. When, as here, a district court offers two or more independent rationales for its deviation, an appellate court cannot hold the sentence unreasonable if the appellate court finds fault with just *one* of these rationales. Picking through the district court's analysis in that manner would be wholly inconsistent with the Supreme Court's directives to examine the "totality of the circumstances," *id.*, and to defer to the considered judgment of the district court. *See id.* at 597-98, 602; *Kimbrough*, 128 S. Ct. at 576; *Rita*, 127 S. Ct. at 2465, 2469; *see also United States v. Martin*, 455 F.3d 1227, 1237 (11th Cir. 2006) (explaining that the appellate court does not review each decision made by the sentencing court for reasonableness, but rather considers only the final sentence, in its entirety, for reasonableness).

In this case, the district court found that *both* the Guideline departure provisions *and* the § 3553(a) factors supported its sentence of 125 months. Although Evans challenges — at length — the court's analysis of the Guidelines departure provisions, he offers no argument that application of the § 3553(a) factors does not justify his sentence. As explained above, the record provides abundant support for the district court's conclusion that the § 3553(a) factors support the sentence. Accordingly, even assuming the district court erred in applying the Guideline departure provisions, Evans' sentence, which is well-justified by § 3553(a) factors, is reasonable.[4]

2.

Evans' sole remaining argument focuses on the extent of the upward deviation from the advisory Guidelines range. Relying on some of our pre-*Rita* and pre-*Gall* precedent, *e.g.*, *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), and *United States v. Khan*, 461 F.3d 477 (4th Cir. 2006), Evans contends that his sentence must be reversed because it is not supported by the "exceptionally compelling" reasons necessary to sustain this very significant deviation from

---

[4]This is not to say that an error in applying the departure provisions of the advisory Guidelines is irrelevant to our review. When the district court imposes a non-Guidelines sentence based on a correct application of the Guideline departure provisions, the resulting sentence reflects the judgment of *both* the district court *and* the Commission that a non-Guidelines sentence is appropriate. *See Rita*, 127 S. Ct. at 2465. Particularly in cases in which the district court has imposed a sentence substantially outside the Guidelines range, the Commission's judgment will certainly provide one compelling justification for the departure. *See Kimbrough*, 128 S. Ct. at 575-76. Conversely, when a non-Guidelines sentence runs directly counter to the Commission's position, either because the district court has erroneously applied the departure provisions or because it has determined in a "mine-run case" that the Guidelines range fails to reflect the § 3553(a) factors, "closer review may be in order." *Id.* at 574-75. But the Commission's position as to when a sentence outside the Guidelines range is appropriate is only one of the factors we consider to "ensure that the [district court's] justification is sufficiently compelling," and, regardless of whether the district court has agreed or disagreed with the Commission, we may only review the reasonableness of the sentence imposed. *Gall*, 128 S. Ct. at 597.

the Guidelines range. Whatever support these cases may have once provided for this argument, *Gall* undermines it, if not rendering it wholly meritless.

In *Gall*, after acknowledging the relevance of the difference between the imposed sentence and the recommended Guidelines range, the Court explicitly rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." 128 S. Ct. at 595. Such an approach, the Court explained, would "reflect a practice . . . of applying a heightened standard of review to sentences outside the Guidelines range," which it found "inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions — whether inside or outside the Guidelines range." *Id.* at 596.

To be sure, requiring "compelling" justifications for a deviation sentence may reflect a standard different than the "extraordinary circumstances" test imposed by the Eighth Circuit and invalidated in *Gall*. Yet, as the *Gall* Court observed, applying a uniform, heightened standard of review for all variances sentences "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range," an approach the Court previously had rejected in *Rita*. *See id.* at 595 (citing *Rita*, 127 S. Ct. at 2467). Therefore, if a district court "decides that an outside-Guidelines sentence is warranted," it need only "ensure that the justification is *sufficiently* compelling to support the *degree* of the variance." *Id.* at 597 (emphasis added).

On review, we may still "consider the extent of the deviation, but [we] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id. Gall* reinforces the wisdom that appellate courts must not lightly disturb the judgment of district judges, given their on-the-scene, "superior position." *Id.* Accordingly, we must review all sentences, even those "significantly outside the Guidelines range . . . under a deferential abuse-of-discretion standard." *Id.* at 591. Thus, *Gall* prohibits us from doing what Evans requests; we cannot disregard the considered

reasoning of the district court and require "exceptionally compelling" justification for a sentence significantly outside the Guidelines range.[5]

## C.

In sum, the sentence selected by the district court is reasonable, and we find Evans' arguments to the contrary unavailing. The district court recognized that the Guidelines served as "the starting point and the initial benchmark" for sentencing determinations. *See id.* at 596. It then carefully considered the § 3553(a) factors and fashioned a sentence "sufficient, but not greater than necessary, to comply with the [federal sentencing] purposes," *see* 18 U.S.C. § 3553(a), and it provided ample reasons why "the § 3553(a) factors, on the whole, justified the sentence," *see Gall*, 128 S. Ct. at 602. Therefore, since we find neither "significant procedural error" nor evidence of any "substantive [un]reasonableness," *see id.* at 597, we hold that the district court did not abuse its discretion in sentencing Evans. We recognize that the sentence imposed on Evans may not be the only reasonable sentence, but it is *a* reasonable sentence, and the Supreme Court has directed that any reasonable sentence be upheld.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

GREGORY, Circuit Judge, concurring in the judgment:

Although I concur in the result reached by the majority, I write separately to encourage a more tempered overall approach to the substan-

---

[5]*Gall* similarly forecloses Evans' heavy reliance on the fact that the 125-month sentence that the district court imposed is over 300 percent above the high end of the advisory Guidelines range. For the Court in *Gall* expressly rejected both a "rule requiring 'proportional' justifications for departures from the Guidelines range," 128 S. Ct. at 594, and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence," *id.* at 595.

tive reasonableness analysis. While I recognize that *Gall* provides the district court with a tremendous amount of discretion, it is not limitless; our decision that a district court's sentence is procedurally reasonable should not mean that a subsequent finding of substantive reasonableness is a fait accompli. Indeed, though deference to a district court's sentencing decision is required, the words "abuse of discretion"[1] cannot be a legal incantation invoked by appellate courts to dispel *meaningful* substantive review of a district court's sentence. While I agree that Evans's exceptional criminal history and risk of recidivism justify the district court's substantial variance, the majority's reasoning could reasonably be extended to justify any sentence up to the statutory maximum of 15 years.

The "totality of the circumstances" substantive reasonableness calculus demands that we proceed beyond a formalistic review of whether the district court recited and reviewed the § 3553(a) factors and ensure that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants. *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007). There is little doubt that these objectives can be, under certain circumstances, countervailing and irreconcilable. Despite this analytical tension, the Supreme Court wanted the reasonableness standard of review to "avoid excessive sentencing disparities," *United States v. Booker*, 543 U.S. 220, 264 (2005), and "to iron out sentencing differences." *Id.* at 263; *see also*, *Gall*, 128 S.Ct. at 604 (Alito, J., dissenting) ("Indeed, a major theme of the [*Booker*] remedial opinion, as well as our decision last Term in [*United States v. Rita*, 127 S.Ct. 2456 (2007)], was that the post-*Booker* sentencing regime would still promote the Sentencing Reform Act's goal of reducing sentencing disparities.")[2] Thus, consistent sentencing remains a significant priority

---

[1]The abuse of discretion standard itself is of limited use. Indeed, as Judge Friendly once observed, "[t]here are a half dozen different definitions of abuse of discretion, ranging from ones that would require the appellate court to come close to finding that the trial court had taken leave of its senses to others which differ from the definition of error by only the slightest nuance, with numerous variations between the extremes." Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 763 (1982) (internal quotation marks omitted).

[2]Nevertheless, the *Booker* Court was hardly unaware of the potential for widely divergent and unprincipled sentencing among the district

of the Court, and district courts should keep this in mind when sentencing, particularly when they choose to venture beyond the correctly calculated guideline sentence.

As with all sentences, a non-guideline sentence must be "sufficient, but not greater than necessary" to satisfy the purposes set forth in 18 U.S.C. § 3553(a)(2). Because the extent of the variance in this case is substantial — almost eight years above the guideline range — it is "uncontroversial that [such] a major departure should be supported by a more significant justification than a minor one." *Gall*, 128 S.Ct. at 597. And as stated above, I am convinced that the district court's reasoning justified its decision to significantly vary above the guideline sentence; however, I am troubled that there are few guideposts in the majority opinion to cabin the district court's discretion in any significant manner or provide any inclination as to how we would overturn a sentence based on substantive reasonableness.

To be fair, the analysis underlying reversal on substantive reasonableness grounds in the post-*Gall* era is evolving. While I have closely studied the post-*Booker* Supreme Court triumvirate of *Rita*, *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall*, I must conclude that the Court has left the specifics of how appellate courts are to conduct substantive reasonableness review, charitably speaking, unclear. Inevitably, as is the nature of appellate courts, vacuums of legal uncertainty left by the Supreme Court are quickly filled in a circuit by circuit manner, sometimes resulting in a grab bag of possible solutions.

For example, in *United States v. Pugh*, 515 F.3d. 1179 (11th Cir. 2008), the Eleventh Circuit vacated and remanded the district court's

courts. While the majority in *Booker* dismissed such concerns by holding that appellate courts have had years of experience with the unreasonableness standard, Justice Scalia forcefully made the point that "no one knows — and perhaps no one is meant to know — how advisory Guidelines and unreasonableness review will function in practice." *Booker*, 543 U.S. at 311 (Scalia, J., dissenting) (internal quotation marks omitted). Justice Scalia, in my view, presciently observed that the unreasonableness standard of review will "produce a discordant symphony of different standards, varying from court to court and judge to judge. . ." *Id.* at 312 (internal quotation marks omitted).

non-custodial sentence of a defendant convicted of possessing child pornography for substantive unreasonableness. Specifically, the Eleventh Circuit held that the district court committed a "clear error of judgment", *id.*, at 1203 (internal quotation marks and citation omitted), by failing to weigh "the [§ 3553(a)] factors in a manner that is at least loosely commensurate with their importance to the case, and in a way that achieves the purposes of sentencing stated in § 3553(a)." *Id.* (internal quotation marks and citation omitted).

In *United States v. Cutler*, 520 F.3d 136 (2d Cir. 2008), a case with direct application to the facts in our case, the Second Circuit reviewed the sentence of a defendant convicted of "charges relating to extensive bank frauds [over $100 million] and tax frauds [$29 million]." *Id.* at 139. Despite a guideline range of 78-97 months for the defendant, the district court sentenced him to twelve months and one day, a sentence that the guidelines equate with losses of around $70,000. The *Cutler* court discussed its post-*Gall* approach to determining whether a sentence is substantively reasonable as follows:

> Accordingly, 'tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range,' in order to determine whether a sentence is substantively unreasonable, i.e., an abuse of discretion, *Gall*, 128 S.Ct. at 597, we look to see whether the sentencing court erred in interpreting any of the § 3553(a) factors or made any other error of law, whether it made any clear error in assessing the evidence, and whether its decision was beyond the outer limits of the range of decisions permitted by § 3553(a).

*Id.* at 157-58. The Second Circuit found the district court's sentence to be substantively unreasonable because "[t]he implicit finding that a fraud causing losses of more than $100,000,000 is no more serious than one causing losses of little more than $70,000 reflects an erroneous interpretation of § 3553(a)(2)(A)'s requirement for punishment that is just and is antithetical to the need to promote the perception of fair sentencing." *Id.* at 161 (internal quotation marks and citation omitted).[3]

---

[3]Furthermore, the Second Circuit stated that "our review of the record persuades us that the district court erred by disregarding the Guidelines

There can be little doubt that both the Eleventh Circuit and Second Circuit substantive reasonableness analysis focused on what amounted to a re-weighing of the facts in the context of § 3553(a). I agree with this approach. While the oft-stated aphorism that district courts are in the best position to make factual decisions and "judge their import under § 3553(a) in the individual case" *Gall*, 128 S.Ct. at 597 (internal quotation marks and citation omitted), is unassailable, I can see no way, as a practical matter, to review the substantive reasonableness of a sentence without assessing the district court's rationale for the sentence and reviewing its application of the facts to the guidelines and § 3553(a).[4] Even if a district court reviews each of the § 3553(a) factors individually, its sentence is not inevitably reasonable. To conclude otherwise would make appellate review, in effect, a nullity.

In addition, the Second Circuit's view that substantive review of a district court's decision must include an analysis of whether "its decision was beyond the outer limits of the range of decisions permitted by § 3553(a)," *Cutler*, 520 F.3d at 158, is correct. Thus, in the context of this case, it is worth reviewing a recent post-*Gall* appellate decision involving financial fraud.[5] In *United States v. Williams*, 517 F.3d 801 (5th Cir. 2008), a unanimous Fifth Circuit panel affirmed the district court's decision to sentence a defendant convicted of federal conspir-

provision addressing a defendant's culpability for jointly conducted activity, by exceeding its departure authority, and by misinterpreting certain of the § 3553(a) factors. In addition, certain of the court's findings are clearly erroneous, and certain of its rationales are detrimental to the perception of fair sentencing." *Id.* at 158 (internal quotation marks and citation omitted).

[4]As the district court in this case clearly set out "a short clear written statement or a reasoned statement from the bench to support its departure," *United States v. Rusher*, 966 F.2d 868, 882 (4th Cir. 1992) (internal quotation marks and citation omitted), I agree with its decision to depart upward by fourteen levels.

[5]Unfortunately, due to the limited time that has passed since *Gall*, there are a scant number of cases that involve an appellate court considering the substantive reasonableness of a sentence involving financial fraud. *See, e.g.*, *Cutler*.

acy, fraud, money laundering, and criminal forfeiture to 172 months imprisonment, a sentence 75 months (six years and three months) greater than the maximum guideline sentence of 97 months. In sentencing the defendant, the district court in *Williams* reasoned that:

> Based on all the factors of this case, the tremendous problems that it caused to the individuals, all the testimony that was presented in court, the fraud and the complexity of the fraud, the number of states and the number of individuals, and where these people were sought to in fact contribute to this scheme unwittingly. The only one who knew that this was a scheme were the ones putting this scheme together, and the lead person in that entire scheme was Mr. Williams.

*Id.* at 812. The district court found that at least 297 people suffered as a result of the defendant's scheme and the defendant showed no remorse during sentencing despite his role as the ring leader. *United States v. Williams*, 101 Fed. Appx. 435, 437 (5th Cir. 2004). The district court also ordered restitution in the amount of $2,995,645.20. Comparing these facts to the instant case, Evans's actions cost 22 businesses in North Carolina, South Carolina, and Virginia a total of $13,634.89. The district court ordered Evans to pay these victims $11,375.14 in restitution.

In addition, unlike the majority, I find it appropriate to review pre-*Gall* caselaw from the Fourth Circuit that is relevant to this case. In *United States v. Tucker*, 473 F.3d 556, 564 (4th Cir. 2007), we held that a district court's variance of approximately five times over the top of the guidelines range was impermissible. Tucker pled guilty to one count of bank fraud, in which the bank lost $70,000-$120,000. According to the PSR, Tucker's offense level was 13, which combined with her criminal history category of IV, provided for a guidelines range of 24-30 months. The district court chose to sentence Tucker to 144 months in prison because of the need to protect the public from further crimes of the defendant, *id.*, at 559, the nature of the offense, and the history and characteristics of the defendant. Specifically, the district court found that Tucker, like Evans, was a "dedicated thief and apparently she always will be" and "she is an [sic] habitual thief, scheming thief." *Id.* (internal quotation marks omitted).

The facts here can be readily distinguished from those in *Williams* and *Tucker*. For example, Evans, in addition to his lengthy criminal history in the financial fraud area, was guilty of assaulting a female on two separate occasions. Nevertheless, while the variance in this case was justified, we must ensure that the delicate balance between consistency and individualizing sentences does not result in a myriad of inconsistent and intellectually incompatible sentences. In order to prevent a veritable hodgepodge of sentencing decisions, and to "secure nationwide consistency," the federal sentencing guidelines must remain a central tenet of the sentencing calculus since they are "the starting point and the initial benchmark" for all sentencings. *Gall*, 128 S.Ct. at 596.

Overall, in the instant case, the district court's fourteen level departure and a guideline range of 100-125 months resulted in a sentence of 125 months that was sufficient but not greater than necessary to comply with the purposes of § 3553(a)(2). While I concur in the result reached by the majority, I think it is necessary to urge the Court to maintain prudent bearings as it navigates the murky waters of substantive reasonableness. We must guard against the possibility that appellate review will become limited to "a mere formality, used by busy appellate judges only to ensure that busy district judges say all the right things when they explain how they have exercised their newly restored discretion[.]" *Booker*, 543 U.S. at 313 (Scalia, J., dissenting). For our review of substantive reasonableness to have any teeth, our analysis must take place at a level that does not intrude upon the district court's discretion yet still provides for a meaningful review of the district court's sentence. Walking this tightrope requires deftness on our part for we must take into account the facts underlying the district court's decision, and to a certain extent, determine whether the district court properly weighed the underlying facts. In addition, we must review the sentence's consistency (or lack thereof) with similarly situated defendants.[6] I believe the application of such a cohesive and consistent analytical structure will prove to be instructive for all parties involved in the sentencing process.

---

[6]Of course, an appellate court's disagreement with the length of a sentence is not enough, on its own, to reverse a district court on the basis of substantive reasonableness. *Gall*, 128 S.Ct. at 597.